UNITED STATES DISTRICT COURT        SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Lisa Lyerly, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | Civil Action H-13-2137 |
| | § | |
| Southwest Airlines Company, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## Opinion on Summary Judgment

1.    *Background.*

      Lisa Lyerly worked as a flight attendant for Southwest Airlines for over seventeen years. She suffers depression, peripheral neuropathy, borderline diabetes, and addiction. Lyerly was diagnosed with bipolar disorder in 2007, and she was being treated for a foot condition when she was fired. At Southwest, Lyerly used the Family Medical Leave Act for these and other problems. In 2007, Southwest gave Lyerly two months of medical leave while she was being treated for her bipolar disorder. No adverse action followed these absences.

      Southwest's employment policy assesses "points" – demerits – for attendance violations. After a committee's review, Southwest may fire an attendant who has accrued twelve points. Employees may erase points by things like one-quarter of perfect attendance, and points older than sixteen months expire Naturally, employees do not accrue points for absences excused by a doctor's note or taken under the Family Medical Leave Act.

      Before December 2011, Lyerly accumulated nine attendance points. In several letters Southwest warned her that she was approaching her limit. In December 2011, Lyerly missed six days of work for mental-health problems, accruing twelve additional points. Lyerly did not submit a doctor's note nor request medical leave. On January 4, 2012, Lyerly entered a rehabilitation clinic and submitted a medical-leave request dated back 17 days to December 18. On January 4, 2012, Southwest placed Lyerly on company medical-leave, but it did not make the leave retroactive.

      On February 17, 2012, Southwest terminated Lyerly when she returned to work. On

March 19, Southwest and the union agreed with Lyerly's approval reinstating her employment. All three agreed that Lyerly did not dispute past attendance infractions and that she would have twelve points. After her return to work, Lyerly was able initially to reduce her points, but she had two more attendance lapses. She accrued eleven and one-half points.

Then in July 2012, Lyerly's feet hurt. She went to a doctor for her feet on September sixth and was excused from work with a doctor's note on September seventh, eight, and ninth. The doctor released her to return to work without restrictions; however, Lyerly did not "feel" that she was ready to return to work. On September 11, she got a doctor's note extending her recovery to the fourteenth. She then asked that her supervisor remove her from her trip on September fourteenth, fifteenth, and sixteenth. Her supervisor refused and referred her to a leave specialist.

The leave specialist gave Lyerly a family medical leave eligibility notice without a claim number. She was to complete the paperwork and return it. Lyerly did not – neither completed, nor returned. Alternatively, Lyerly could have reported sick pending medical leave, but she did not.

On September 14,, Lyerly notified Southwest that she might be late for work. She says that she was suffering additional foot problems and had to return home to get different shoes. She arrived to work four minutes late and accrued another one-half point reaching twelve points. After a committee review, Southwest terminated her on September 21.

1.    *Differential Treatment.*

Lyerly has not established a prima facie case under the Americans with Disabilities Act. She must show that she suffers from a disability, she was qualified for her job, Southwest treated her adversely, and that she was treated adversely because of her disability. Should Lyerly establish those things, Southwest must show a nondiscriminatory reason for her having been treated adversely. If it does, Lyerly must show that the reason is a for hostility for the taking of family medical leave. For the summary judgment, Southwest accepts that Lyerly is disabled and that she was treated adversely.

Southwest's uncontested evidence shows that every attendant who violated the attendance policy in 2009, 2010, 2011, 2012, and 2013 was fired. Similar to Lyerly, nine of them were reinstated after a union grievance. Unlike Lyerly, none of them reached termination level after they were reinstated. The evidence demonstrates that at the time Lyerly was fired the attendance policy was uniformly enforced.

Lyerly relies a case involving Southwest that was decided in 2010. In it, the court held that a Southwest attendant who was fired for violating the attendance policy had been treated differently when he produced evidence that five attendants who reached twelve points had not been terminated.[1] Lyerly has no similar evidence. Lyerly identifies nine attendants to support her claim. She relies on five examples from the case. None of her examples includes someone who was not terminated for exceeding twelve points after that case. Two of Lyerly's examples were fired and reinstated following a union grievance just as she was, but neither reached the termination level after reinstatement. Another two of Lyerly's examples were reinstated after a union grievance, but were later terminated for an infraction other than attendance. This evidence dies not establish a question of material fact that her case was handled differently at the time she was fired.

Lyerly's facts are also different from the plaintiff's in the Austin case. He was terminated and never given a second chance. She, on the other hand, was reinstated and given one. She did not comply with the attendance policy after having been given that second chance.

Additionally, Lyerly claims she should have been pulled from her flight on September 14, 2012, as others were. Lyerly was not confronted by some unforeseen circumstance. She was aware of her foot problems weeks before she was to fly. She could have packed "other" shoes for the trip. She could have taken medical leave. No one told her she was not eligible. If she had taken the leave, she would not have had to be at work and forced to return home to get "different" shoes.

Lyerly relies on two examples where attendants where pulled from flights. In 2004, an attendant was pulled because of personal issues related to his girlfriend's health. In 2011, an attendant was pulled because of "personal reasons." Both attendants were fired as a result of later violations and, like Lyerly, reinstated. The 2004 example is too remote in time to establish differential treatment for Lyerly. The 2011 example does not establish differential treatment because the attendant's personal reason may very well have been pulled for an unforseen circumstance covered by Southwest's policy. She speculates that the personal reason was not covered by the policy. The burden of production is on Lyerly to establish that the attendant was pulled for some a reason parallel to hers. She has not.

---

[1] Carmona v. Southwest Airlines Co., 604 F.3d 848, 861 (5th Cir. 2010).

2.    *Job Qualification.*

The undisputed facts show she did not comply with the attendance policy. Punctuality and reliability are an important part of the duties of an attendant. Southwest is required to have attendants on every flight by federal regulation.[2] Southwest must get a time – a slot to take off from the airport. Southwest has to coordinate gate usage at its terminal. Southwest's passengers rely on their flights arriving on time. If attendants do not show up or arrive on time, the airline must wait on the delinquent attendant or find a replacement creating costly delays.

In another case about another base, the court held that because Southwest's attendance policy was extremely lenient, sporadic attendance issues due to disability did not make an attendant unqualified, but it did not hold that attendants may miss scheduled days at will.[3] The court could not have meant that employees with disabilities should be fully exempt from reliable attendance. Leniency cannot mean that any time an employee is fired for violating the policy that they have been discriminated against.

Lyerly admits that her disability did not prevent her from arriving to work on time. At the committee review, Lyerly told Southwest, "I should allow myself more time to get tor work." She accrued more points because she simply neglected to submit needed paper work. Lyerly was always given medical leave when she needed it and requested it properly. Even if Lyerly was late because of her feet, she could have avoided the issue entirely by following the proper procedures and simply completing the medical-leave form. None of Lyerly's health problems prevented her from complying with the attendance policy or being at work on time.

3.    *Reasonable Accommodation.*

Lyerly also claims Southwest did not reasonably accommodate her health problems. She claims that Southwest's refusal to remove her from the flight on September 14, 2012, was a failure to accommodate. Lyerly must show she was quailed for her job, Southwest knew about her disability, and Southwest failed to make a reasonable accommodation.[4] Lyerly must also have requested an accommodation. This creates Southwest's duty to *reasonably* accommodate, it is not required to respond to however she asked. Southwest is only required to find a

---

[2] 14 C.F.R. § 91.533.

[3] Carmona, 604 F.3d at 860.

[4] 42 U.S.C. § 12112 (a), (b)

reasonable accommodation.[5] Lyerly's requested accommodation is equivalent to an exemption from attendance and the policies about it. This is not reasonable. An accommodation is a routine adjustment to working conditions. It one that is not an ad hoc. Lyerly asked to be pulled from her responsibility to work a flight hours before it was leaving rather than a blanket adjustment to her working condition. Such and request might be easier to grant in another profession, but not at an airline. An example of a reasonable accommodation would be allowing her to wear non-regularity or prescribed shoes, or exempting her from beverage service. Southwest's refusal to exempt her from showing up on time or to work denies nothing reasonable.

4.    *Medical Leave Interference.*

The undisputed facts do not establish a genuine issue of material fact that Southwest interfered with Lyerly's medical leave. Lyerly claims that Southwest's not placing her on medical leave but instead on company-provided leave and Southwest's refusing backdate her medical leave claim to cover the absences in December 2011 was interference. They do not.

The statute requires that an employee comply with company policy when requesting medical leave. An employee's failure to comply – barring extraordinary circumstances – can result in delay or denial of a medical leave.[8] Lyerly did not comply with Southwest's policy for leave under the Act. Lyerly did not submit an application for medical leave under the Act. She submitted a hand-written note three days after she stopped showing up for work. Lyerly had applied for and gotten leave many times while employed at Southwest – all without punishment. The fact that she was placed on company leave instead of leave under the Act does not show interference with her rights; it is a label difference without a medical consequence.

---

[5] 29 C.F.R. 1630.9

[8] 29 C.F.R. § 825.301

5.    *Conclusion*

Lyerly was neither a victim of discrimination nor interference.  She had always been treated more than fairly.  She had always been giving the leave she requested.  She was reinstated after her initial firing.  In the end, Lyerly failed to comply with a neutral attendance policy – a situation which she admittedly could have avoided.  She will take nothing from Southwest.

Signed on December 9, 2015, at Houston, Texas.


Lynn N. Hughes
United States District Judge